WILLIAM L. BLISS and MINA D. BLISS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bliss v. Commissioner
Docket No. 2797-83.
United States Tax Court
T.C. Memo 1985-612; 1985 Tax Ct. Memo LEXIS 16; 51 T.C.M. (CCH) 120; T.C.M. (RIA) 85612; December 17, 1985. Frederick G. Helmsing, for the petitioners. Helen C. T. Smith, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' Federal income tax for the calendar years 1978 and 1979 in the amounts of $36,555 and $569, respectively. The issues for decision are (1) whether William L. Bliss (petitioner) through his sole proprietorship was engaged in a joint venture with his wholly owned corporation of furnishing services to third parties or had entered into equipment leases with that corporation, thereby causing him to be a noncorporate lessor under section 46(e)(3)[1] for purposes of the investment tax credit; and (2) if we determine that petitioner was a noncorporate lessor, whether *18 he has established that the section 162 expenses relating to the qualified property exceed 15 percent of the gross income derived from the property during the first 12 months after it was transferred as required by section 46(e)(3)(B). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, who resided in Mobile, Alabama, at the time of the filing of their petition in this case, filed joint Federal income tax returns for the calendar years 1978 and 1979 with the Office of the Director, Internal Revenue Service Center, Atlanta, Georgia. William L. Bliss (petitioner) is the sole shareholder of Equipment Rental and Contractors Corp. (Equipment Rental) which was incorporated under the laws of the State of Alabama on April 17, 1969. Originally, petitioner was a co-shareholder with two other individuals but in the early 1970s he acquired sole ownership of the corporate stock. During the years here in issue, Equipment Rental's principal business was providing moving, *19 lifting and loading services. These services included the loading and unloading of ships and the lifting and moving of materials and heavy equipment for contractors and industries. The corporation normally contracts orally with its customers on a specific job basis. It provides the heavy equipment necessary to move or lift and in some instances the employees to operate the equipment. The corporation uses a variety of heavy equipment, including cranes and cherry pickers. Sometimes Equipment Rental provides only the equipment necessary for the job. Bill Bliss Equipment and Leasing Co. (Leasing Co.) is petitioner's sole proprietorship which he created in 1976. Leasing Co. owns moving, lifting and loading equipment similar to the equipment owned by Equipment Rental. Leasing Co. provides some of the equipment used by Equipment Rental in servicing customers. A small amount of equipment used by Leasing Co. is rented by it from third parties. During 1978 and 1979, Leasing Co. purchased four items of heavy equipment, described below, and petitioner claimed an investment tax credit on his 1978 and 1979 Federal income tax returns based on these purchases: Description
Date Acquired
Cost or Basis
New P & H 90-Ton
Crane
July 18, 1978
$162,400
New P & H Model
T600XL Truck Crane
September 29, 1978
193,500
New Galion Model
150F Crane
October 24, 1978
85,000
Used Koehring Model
305 Crane
September 4, 1979
8,527
*20 The businesses of both Equipment Rental and Leasing Co. were operated solely by petitioner. When cranes and equipment only were provided to a customer the arrangement was referred to as a "bare rental." When the equipment and personnel necessary to operate the equipment was furnished, the arrangement was referred to as an "operated rental." When Equipment Rental used Leasing Co.'s equipment to supply a customer, it billed the customer for the equipment furnished and retained 6 percent of the rental income received from the customer on bare rentals, turning the balance over to Leasing Co. If Leasing Co. supplied equipment directly to a third party on a bare rental, Leasing Co. billed the third party directly. In an operated rental, labor, fuel and personnel necessary to perform a job were all furnished for the customer. When Equipment Rental used equipment of Leasing Co. for an operated rental, it billed the customer and retained approximately 33 percent of the rental income received from the customer, remitting the balance to Leasing Co. When Leasing Co. furnished equipment to a third party, the personnel used to operate the equipment were employees of Equipment Rental. The State *21 of Alabama imposes a lease tax only on bare rentals. Petitioner never entered into written agreements or contracts with either Equipment Rental or unrelated third parties. Petitioner decided the equipment to be purchased for both the corporation and the sole proprietorship. During 1978 and 1979, Leasing Co. owned seven cranes. During 1978 and 1979, the offices of Leasing Co. and Equipment Rental were located in the same building and their cranes were kept on the same lot. That property was owned by petitioner. Equipment Rental rented the building and property on which the cranes were stored from petitioner pursuant to a verbal lease. Petitioner alone determined the amount of rent which Equipment Rental paid. Leasing Co. and Equipment Rental used separate billing accounts and invoices as well as separate bank accounts. Petitioner individually purchased the four items of heavy equipment at issue in the instant case and financed them through the First National Bank of Mobile. The equipment was titled in the name of petitioner, William L. Bliss. When a customer requested a bare rental, petitioner would dispatch equipment belonging either to Leasing Co. or to Equipment Rental. *22 When the customer requested an operated rental, petitioner dispatched some employees of Equipment Rental along with the equipment, whether the equipment dispatched was the property of Equipment Rental or Leasing Co. In all instances, petitioner alone decided which equipment would be used to perform the contract. During 1978 and 1979, Leasing Co. paid no employee wages or benefits and maintained no insurance on its equipment including the four cranes in issue. Leasing Co. did not pay for any fuel, lubrication costs or equipment repairs relating to these cranes in 1978 and 1979. During the years in issue, Equipment Rental did routine maintenance on the cranes. Beginning in October 1978, Leasing Co. provided the 150F Galion Crane in issue to Equipment Rental for a period of 12 months at a set monthly rate. A certified public accountant prepared petitioner's 1978 and 1979 returns as well as the corporate income tax returns filed by Equipment Rental for tax years 1978 and 1979. On Schedule C attached to their 1978 and 1979 Federal income tax returns, petitioners claimed gross receipts or sales from Leasing Co. in the respective amounts of $85,273 and $182,872. The following *23 deductions were claimed: 1978 Deductions Claimed for Leasing Co.
on Petitioners' Schedule C
Bank charges
$ 12
Commissions
250
Depreciation
65,536
Interest on business indebtedness
15,300
Repairs
298
Subcontract work
200
Other
60
Total deductions
$ 81,656
1979 Deductions Claimed for Leasing Co.
on Petitioners' Schedule C
Commissions
$ 3,635
Depreciation
121,814
Insurance
1,513
Interest on business indebtedness
45,451
Other
40
Total deductions
$172,453
On their 1978 and 1979 joint income tax returns, petitioners claimed investment tax credits for the four pieces of heavy equipment that Leasing Co. purchased in 1978 and 1979. Respondent disallowed petitioners' claimed investment tax credits for 1978 and 1979 with the explanation that petitioners as noncorporate lessors did not satisfy the requirements of section 46(e)(3)(B) and were therefore not entitled to the investment tax credits claimed on the heavy equipment. OPINION Section 38 allows a credit against tax for investments in certain depreciable property in an amount *24 determined under section 46. Section 46(e)(3) provides certain conditions on the allowance of this credit to noncorporate lessors. [2] The parties agree that the heavy equipment Leasing Co. purchased in 1978 and 1979 qualifies as "section 38" property. Petitioner, however, contends that he was not a noncorporate lessor subject to the limitations imposed by section 46(e)(3)(B). *25 Petitioner contends that the relationship between Leasing Co. and his corporation, Equipment Rental, was in the nature of a joint venture or management contract rather than a lease as contended by respondent. Petitioner argues that Leasing Co. did not transfer control of or in interest in the equipment to Equipment Rental and therefore retained the risk of loss over the equipment. Petitioner argues that Leasing Co. in its joint venture with Equipment Rental furnished the labor and overhead in an operated rental and that this relationship constituted a furnishing of services rather than a lease. Based on this contention, petitioner concludes that he is not subject to the noncorporate lessor limitations imposed in section 46(e)(3)(B) with respect to operated rentals. [3]
*26 Petitioner argues that even if the relationship between Leasing Co. and Equipment Rental is determined to be a lease so that the noncorporate lessor limitations are applicable, the 15 percent of gross income test imposed by section 46(e)(3)(B) was satisfied by Leasing Co. permitting Equipment Rental to retain a portion of the proceeds received from a third party that was sufficient to cover the expenses incurred by Equipment Rental on behalf of Leasing Co. Petitioner argues that this is the situation also with respect to the bare rental leases which he concedes were leases even if his position with respect to the joint venture is sustained. Petitioner argues that he is not within the class of persons to which Congress intended to deny the investment credit by enacting section 46(e)(3). Petitioner states that Congress determined that only lessors who manufactured or produced the property or short-term lessors should qualify for the credit. Congress intended by passage of section 46(e)(3)(B) to deny the investment credit to noncorporate lessors in mere investment or financing situations by limiting its availability to those situations in which the lessor retained the risks and *27 obligations typically associated with the transaction of an active business.H. Rept. No. 92-533 (1971), 1972-1 C.B. 498, 513; S. Rept. No. 92-437, 1972-1 C.B. 559, 583. Petitioner argues that he has not devised a mere financing arrangement involving long-term leases in which he transferred all control and risk of loss to the purported lessee. Petitioner concludes that the arrangement that existed between Leasing Co. and Equipment Rental in the instant case does not constitute the type of transaction Congress intended to limit by enacting section 46(e)(3)(B). Whether petitioner may be precluded by section 46(e)(3)(B) from obtaining an investment tax credit turns on whether the arrangement between Leasing Co. and Equipment Rental constituted a lease or a management contract. The substance of the arrangement rather than its form determines its true character. Americo v. Commissioner,82 T.C. 654, 670, 680 (1984); Kingsbury v. Commissioner,65 T.C. 1068, 1085 (1976). Whether a management arrangement rather than a lease exists *28 requires consideration of the control over the venture retained by the property owner and the risk of loss retained by the property owner. Freesen v. Commissioner,84 T.C. 920, 940 (1985); Amerco v. Commissioner,82 T.C. at 670; State National Bank of El Paso v. United States,509 F.2d 832 (5th Cir. 1975); McNabb v. United States, an unreported case ( W.D. Wash. 1980, 47 AFTR 2d 81-513, 81-1 USTC par. 9143). [4]
Section 46(e)(3) does not define a lease for income tax purposes. Section 1.46-4(d)(4), Income Tax Regs., however, provides that for purposes of determining whether property is subject to a lease, the provisions of section 1.57-3(d)(1), Proposed Income Tax Regs., 35 Fed. Reg. 19769 (Dec. 30, 1970), (relating to the definition of a lease), shall apply. Respondent argues on brief that we should apply the definition of lease contained in the proposed regulation. This proposed regulation defines *29 the term lease in an extremely broad manner as "any arrangement or agreement, formal or informal, written or oral, by which the owner of property (the 'lessor') receives consideration in any form for the use of his property by another party." Recently in Freesen v. Commissioner,84 T.C. 920, 939 (1985), we addressed the effect to be given to this proposed regulation and concluded that it has remained in the proposed stage for over 14 years and "does not have the effect of law as respondent contends." [5]
Freesen v. Commissioner,supra, dealt with whether to characterize as leases for purposes of section 46(e)(3) agreements entitled joint ventures involving heavy construction equipment. The taxpayers characterized the transactions as joint venture agreements for the valid business reason that the production of rental income would have disqualified the taxpayers' subchapter S election. Freesen,supra at 936. In Freesen, we concluded that the transactions in question constituted leases because of (1) the taxpayers' *30 retention of merely minor supervisory functions concerning the maintenance and servicing of its equipment; (2) the taxpayers' lack of control over the funds associated with the performance of the contract; (3) the absence of a "best efforts" clause obligating the lessee to obtain the maximum hourly usage rate of the equipment in the performance of the contracts (McNabb v. United States, an unreported case ( W.D. Wash. 1980, 47 AFTR 2d 81-513, 81-1 USTC par. 9143)); (4) the taxpayers' failure to adduce evidence indicating that the joint venture status was so represented to third parties ( Luna v. Commissioner,42 T.C. 1067, 1077-1078 (1964)); and (5) the taxpayers "insulate[d] themselves from the traditional risks associated with the operation of a business venture, which is indicative of a leasing arrangement." Freesen,supra at 942-943. In Amerco v. Commissioner,82 T.C. 654 (1984), we addressed whether an agreement constituted a lease or management contract for investment tax credit purposes. In that case we held that the contracts constituted leases due to the taxpayer's failure to retain sufficient control over *31 the entire operation and the taxpayer's relinquishment of risk of loss for operational damages and liability to either the rental companies or the customers. Amerco,supra at 678-679. To persuade us that the transactions in the instant case do not constitute leases, petitioner relies heavily on the opinion of the Fifth Circuit in State National Bank of El Paso v. United States,509 F.2d 832 (5th Cir. 1975), [6] and Meagher v. Commissioner,T.C. Memo. 1977-270. In State National Bank of El Paso, the Fifth Circuit addressed whether a purported lease agreement was a management contract or a lease for the purpose of determining whether payments constituted tax exempt rents. Petitioner argues that the court relied on the owner's retention of control and his *32 retention of the risk of loss over the property to conclude that the relationship had enough characteristics of a management contract to preclude lease characterization. Petitioner incorrectly analyzes the State National Bank of El Paso case. The circuit court remanded that case to the United States District Court for the Western District of Texas to permit a factual determination of whether the arrangement in question constituted a lease, and on remand the district court held the arrangement to be a lease. State National Bank of El Paso v. United States, an unreported case ( W.D.Tex. 1975, 37 AFTR 2d 76-338, 75-2 USTC par. 9868). In reaching this conclusion, the District Court relied on the fact that the conduct of the parties during the years in issue was consistent with that indicating the existence of a landlord-tenant relationship. Petitioner concludes that he retained the risk of loss and the right to control the equipment involved in this case and that he was not engaged in a mere passive investment or financing arrangement. We do not agree with petitioner's contention. When Equipment Rental was using petitioner's equipment, that corporation paid *33 for the maintenance, repairs, fuel and lubrication required for the equipment. Therefore, during the time that Leasing Co. transferred the equipment to Equipment Rental, petitioner relinquished control over the day-to-day operations of the equipment. In addition, when the equipment was in use, Equipment Rental paid for the insurance and petitioner relinquished risk of loss over the equipment while it was leased to Equipment Rental. We recognize that petitioner selected the equipment that would be delivered to a customer and in a sense controlled the initial decisions regarding the equipment, but this does constitute retaining control over the entire venture. In most leasing arrangements the lessor will determine which property or equipment is delivered to the lessee. We do not agree with petitioner's reliance on his common ownership and control of Leasing Co. and Equipment Rental to bolster his argument that he retained control and risk of loss over the equipment. Petitioner set up two distinct entities, and we must treat them as such. The fact that petitioner makes the decisions for both Leasing Co. and Equipment Rental does not render all arrangements between the two entities *34 management contracts. In general, a lease of tangible personal property is a contract by which the owner of such property grants to another the right to possess, use, and enjoy it for a specified period of time in exchange for a periodic payment of a stipulated price referred to as rent. See Black's Law Dictionary, p. 800 (5th ed. 1979). As defined by the Fifth Circuit, "a lease is a transfer of an interest in and possession of property for a prescribed period of time in exchange for an agreed consideration, called 'rent.'" State National Bank of El Paso v. United States,509 F.2d 832, 835 (5th Cir. 1975). Since the arrangement between Leasing Co. and Equipment Rental was made on a price-by-price basis and was not in writing, it is difficult to determine the precise terms of the arrangement. However, an examination of the evidence as a whole shows that petitioner has failed to prove that the arrangement was not a lease. As petitioner recognizes, the burden is on him to establish his entitlement to the claimed investment credit. Petitioner and Equipment Rental treated *35 their arrangement as a leasehold. Petitioner named his sole proprietorship Bill Bliss Equipment and Leasing Co. When he supplied only machinery or equipment, he designated the arrangement a "bare rental." Equipment Rental on its corporate Federal income tax returns for 1978 and 1979 included the cost of "equipment rental" as a cost of operation. We realize that Equipment Rental rented equipment from third parties, but all its arrangements, including those with Leasing Co., were referred to as "equipment rentals." Based on all the evidence of record, we conclude that the arrangement between petitioner and Equipment Rental was a lease. [7]
Petitioner, as a noncorporate lessor, is eligible for the investment credits only if he satisfies the requirement of section 46(e)(3)(B) that the sum of the deductions allowable pursuant to section 162 exceed 15 percent of the rental income produced by the equipment. [8] On his 1978 Federal income tax return petitioner reported total income of $85,273 from Leasing Co. He claimed deductions in the amount of $81,656 from that income. Of these deductions, however, only the *36 following deductions which total $820 are allowable pursuant to section 162 as ordinary and necessary business expenses: [9]
Bank charges
$ 12
Commissions
250
Repairs
298
Subcontract work
200
Other
60
Total
$820
*37 On his 1979 Federal income tax return, petitioner reported total income of $182,872 from Leasing Co. and claimed deductions in the amount of $172,453 from that income. Of these deductions, however, only the following deductions which total $5,188 are allowable pursuant to section 162 as ordinary and necessary business expenses: Commissions
$3,635
Insurance
1,513
Other
40
Total
$5,188
Petitioner argues that compliance with the 15 percent test exists in the instant case if we view the portion of the rental proceeds that Equipment Rental retained rather than remitting to Leasing Co. as being section 162 expenses of Leasing Co. However, respondent's regulations state that "Section 162 expenses paid or payable by any person other than the lessor are not taken into account unless the lessor is obligated to reimburse the person paying the expense." Section 1.46-4(d)(3)(ii), Income Tax Regs. Although expenses incurred by Equipment Rental in leasing the equipment may have reduced the amount Leasing Co. charged Equipment Rental in some transactions, *38 we have no tangible evidence that this arrangement was the norm or that Leasing Co. was "obligated to reimburse" Equipment Rental for those expenses. Furthermore, there is nothing in this record to show the amount of expenses of the type deductible under section 162 applicable to Leasing Co.'s equipment. We therefore conclude that petitioner's sole proprietorship, Leasing Co., as a noncorporate lessor, leased the equipment to Equipment Rental and that petitioner failed to prove that the section 162 deductions exceeded 15 percent of the rental income produced by the equipment. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue.↩
2. Sec. 46(e)(3) provides in part: (e) Limitations with Respect to Certain Persons.-- * * * (3) Noncorporate lessors.--A credit shall be allowed by section 38 to a person which is not a corporation with respect to property of which such person is the lessor only if-- * * * (B) the term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property, and for the period consisting of the first 12 months after the date on which the property is transferred to the lessee the sum of the deductions with respect to such property which are allowable to the lessor solely by reason of section 162↩ (other than rents and reimbursed amounts with respect to such property) exceeds 15 percent of the rental income produced by such property.
3. On brief petitioner concedes that the bare rentals were leases of the "joint venture" of Leasing Co. and Equipment Rental and argues only with respect to these leases that he has met the conditions imposed by sec. 46(e)(3)(B). At the trial petitioner introduced through an accountant witness a schedule which he contends shows the percentage of bare rentals to operated rentals. We did not make any finding based on this schedule since it appeared to us that neither the percentage of the dollar amount of bare rentals to operated rentals nor the number of bare rentals to operated rentals as computed by this witness is helpful in disposing of the issues in this case. Receipts from operated rentals include some amounts for items other than the rental of the machinery, causing the dollar figures to lack comparability even though, as will be discussed in the opinion, petitioner has not shown the amounts of these items. Also, the dollar figures do not show what equipment owned by Leasing Co. produced the dollar amount of rentals. Insofar as this record shows, all receipts from bare rentals could have been from the equipment involved in this case and all the receipts from operated rentals from other equipment owned by Leasing Co.The record shows that one job might be a rental for as long as a year or as short as a few hours, causing the number of jobs to be a totally meaningless figure.↩
4. See also Meagher v. Commissioner,T.C. Memo. 1977-270↩.
5. The proposed regulation is also discussed in Amerco v. Commissioner,82 T.C. 654, 682↩ (1984).
6. Petitioner also relies on Meagher v. Commissioner,T.C. Memo. 1977-270, discussed in Amerco v. Commissioner,82 T.C. 654 (1984). In the Amerco case, at 671-673, we discussed at some length the distinctions between the Meagher case and the situation of the taxpayer in Amerco.↩ The same distinctions are present in the instant case.
7. See Conway v. Commissioner,T.C. Memo 1982-358↩.
8. Sec. 1.46-4(d)(3)(i), Income Tax Regs., provides in pertinent part as follows: (3)(i) The more-than-15-percent test described in subparagraph (1)(ii) of this paragraph is based on the relationship of the expenses of the lessor relating to or attributable to the property to the gross income from rents of the taxpayer produced by the property. The test is applied with respect to such expenses and gross income as are properly attributable to the period consisting of the first 12 months after the date on which the property is transferred to the lessee. * * * ↩
9. Pursuant to sec. 1.46-4(d)(3)(ii), Income Tax Regs., which provides as follows, we cannot include depreciation or interest deductions: (ii) Only those deductions allowable solely by reason of section 162 are taken into account in applying the more-than-15-percent test. Hence, depreciation allowable by reason of section 167 (including amortization allowable in lieu of depreciation); interest allowable by reason of section 163; taxes allowable by reason of section 164; and depletion allowable by reason of section 611 are examples of deductions which are not taken into account in applying the test. Moreover, rents and reimbursed amounts paid or payable by the lessor are not taken into account notwithstanding that a deduction in respect of such rents or reimbursed amounts is allowable solely by reason of section 162. For purposes of this paragraph, a reimbursed amount is any expense for which the lessee or some other party is obligated to reimburse the lessor. Section 162↩ expenses paid or payable by any person other than the lessor are not taken into account unless the lessor is obligated to reimburse the person paying the expense. Further, if the lessee is obligated to pay to the lessor a charge for services which is separately stated or determinable, the expenses incurred by the lessor with respect to those services are not taken into account.